Good evening, this is 029, Carmen Lampert with the Holdridge Compensation Commission. Morning, Justice Holdridge, Justices. My name is Jason Carraway, Carraway, Fisher & Brumbaugh. I represent Carmen Lampert in the case before you today. It's been a little bit since I've been up here. I always enjoy discussing these issues with you. And as you know from my prior experience, I also like quoting the law that you make back to you. We're going to do that a little bit today. It's not always pleasant. No, it is pleasant, especially when you're right. And in this case, you are. This is a fall case. And in my other job as a professor at SIU Law, teaching workers' compensation, we always come to the fall section. And there are all these fall cases that seem to make their way to this bench. Well, here's another one. Here's another one. So this is a nurse who clocks out with a scan card down a hallway at a very small rural southern Illinois hospital, Ferrell Hospital. She's worked there for five years. And her testimony is, for the majority of the time she worked there, what she did on the night of the accident is what she did every night. There were multiple entrances and exits to this hospital. And just to ask a special question, there's no argument that the employer controlled which entrance and exit she came in by, is there? To answer your question directly, Justice Hudson, I think I'm answering it. And if not, you'll let me know. She was allowed to park an entrance and exit from any of the exits in the hospital. Right. And that's maybe a fact. She was not controlled or directed by the employer, as sometimes happens. Right. She could have gone out the front door, could have gone out the side door. Thank you. That's absolutely correct. Parking is at a premium at the Ferrell Hospital, as you can imagine.  Those maps were drawn on at trial with multiple markers, and we put on a very lengthy trial to try and establish all of this. What is not in dispute is that the exit she left from was the closest way to get out. The hospital has a front exit that looks like a hospital front exit. It says, like, entrance, and there are big doors that slide. Inside of there are people who sit in and take your insurance. That's what it looks like. Not where this happened. If you look at these pictures, and if you didn't know Ferrell Hospital, you wouldn't even know this was an entrance or an exit, other than there's a door there. In fact, this is the back door. Are you saying it's a defect? If there's a hazardous condition, is my first case, my first argument. Okay, so what is the defect that your client claims to have contributed to cause her fall? Not that you have identified, which can be something separate and apart from a contributing factor, but which your client testified actually caused her to fall or contributed to cause her fall. Thank you, Justice Harris. So this court, in the Dudich case in 2017, talked about the distinction between a hazard and then an analysis of neutral risk. That's what Justice Holdridge authored and all four of them. The question is, what's the hazard? There are two hazards. What are they? Tell us. First of all, Justice Hoffman, there was supposed to be a light. Did your client ever testify that she fell because of darkness? She testified it was dark when she left, and she testified that there were carpeted stairs. Did she say she couldn't see the steps? What? Did she say she couldn't see the steps? Not specifically. That's not what she said, Justice Harris. You're correct. How do we imply that the lighting had anything to do with her falling if she herself said it didn't, never mentioned it? Well, first of all, Justice Hudson, that's a good question. And I think that surrounding circumstances would lead the court to take judicial notice of that. And let me explain that. Yes, please. I'm intrigued, but I question where you're going with this. Go ahead. There's a light above. First of all, it's November 26th. It's 8 o'clock at night in southern Illinois. There are weather reports. We can probably take judicial notice. It's dark. We assume it's dark. It's dark. It's also misty and sleety, according to my client's testimony and the NOAA weather reports in evidence. Yes. Why is there an outside floodlight above a back door of a hospital that right in front of the back door are four carpeted stairs directly in front of it to illuminate the stairway? That's what lights are for. I've got nobody up here suggesting that had your client testify that she slipped on the stairs because she couldn't see it because the light was out, that she may very well have been able to establish a hazardous condition on the premises that caused her to fall. But in the absence of any testimony by your client that the reason why she fell was because of the lack of adequate lighting, how do we come to that conclusion? Justice Hoffman, let's look at her telephonic statement. Before I represented her, certainly, she gave a recorded statement to an insurance representative. This is page 4 of my brief and starting at page 666 of the record. This came up at trial. She was cross-examined on the statement she provided near to the time of the accident to the representative of the respondent's insurance carrier. This is what she testified to, or testified and gave a recorded statement to. She said there was usually a light on above. She stated it was raining at the time of the fall. And she said, quote, it was slick and they just recarpeted the stairs. There's like four stairs there. Specifically regarding the fall, she stated, so I had a hold of both rails because I thought I'll get a hold of both rails, but I didn't even make it down the first step. Whether inaudible, I don't know what happened. I just slid off the step or whatever, and I held onto the rail with my right hand. I never turned it loose, so nothing really hit until my foot. Now, after that, she's continuing to be pressed by the insurance representative on the phone and gets asked the same question. She says, well, quote, they were just recarpeted, so you know they weren't really wet. They were just, it was like a light drizzle. Now, when she explained this at trial under cross-examination, she said she couldn't recall what she said to the representative. What does this have to do with anything? What does this have to do at all with the lighting conditions? We can't take judicial notice. You seem to be suggesting the fact that they had this light there for a purpose to illuminate the stairs, gets out, that we should take judicial notice of the fact she must have fallen because it was dark. How do we do that? You can do that, and you can also do it in conjunction with the second hazard. But she never said anything. From what you just read there, it had nothing to do with the light. She never even mentioned the lighting and all that colloquy that you referred to. And when she testified, she said she missed a step. She never testified at the hearing that it was due to improper lighting. So that's what we're wrestling with. Why is this lighting a factor here? Well, I think the lighting tells the story in conjunction with the stairs. The stairs were carpeted. The stairs were slick. I don't think there's any dispute that the stairs were slick and that she fell down the stairs. I think you're inviting us to fill in the gaps in the evidence. Okay. In the absence of direct testimony, you'd have to concede by the claimant that she fell because it was dark and the lighting had something to do with the fall. You'd have to concede she never testified to that. She only testified that it was dark, yes, Justice. And it was slippery. And it was slippery. Okay. And so the first analysis is hazard, like this court said in 2017. That's not what Arbitrator Lindsey did. Arbitrator Lindsey didn't take it in that process. She up-funneled all of her decision through greater risk. Now, we all know from your decision in 2017 that if the hazard isn't found, then we go into this risk analysis, which we've done a lot, whether it's personal, neutral, or ideal. And this would be a neutral risk, correct? Correct. So neutral risk can make a case compensable if that neutral risk is faced by an employee on a more frequent basis than the general public. That's true. So how did that happen here? Because that's the only testimony in the record. Remember, this is the back door. If you look at this, and even their own witness, Kaylee Bruce. Counsel, traversing steps is not a risk that's compensable, according to the Supreme Court, unless, of course, you are required to traverse steps more often than the general public. There's no evidence in this record that she had to climb stairs more often than the general public. Nor is there any evidence in this record there was anything wrong with the stairs. Now, if that's the case, it's a neutral risk and it's non-compensable. And that's exactly what this arbitrator found. Arbitrator says she could see well enough. She was able to grasp both handrails. She could see well enough to locate her shoulder bag and receive a telephone to call for help. She observed the alleged darkness when she exited the doors. And it says here she testified that there was no defect whatever in the steps. Now, you put on a witness, Owen, that said there was, and the arbitrator found it not credible because she was contradicted by every other witness, and said that your client testified that the carpet was free of defects. What's the risk to which she was exposed to that was greater than the risk encountered by the general public? Thank you, Justice Hoffman. I disagree with the arbitrator's, first of all, I disagree with the characterization of how the arbitrator viewed my client's testimony. And that also, Justice Hoffman, folds into your question about what my client said was wrong with the steps. These steps are not defective in a way that sometimes we see steps, like concrete steps that have a chunk out of them. We've seen those cases where people fall up and down those. What's defective is that they were carpeted and slick on the night of the accident. Now, is there testimony in the record that they were slick? Yes, Your Honor. Is there testimony in the record that they lacked the proper static coefficient of friction because of the way they were constructed? Definitely will not be, Your Honor. You're definitely right that there is clear testimony in the record that the stairs were slick because it had been raining in wintertime. So now let me ask you a question. Yes, Your Honor. Do members of the general public have to encounter slick conditions when they're the result of a natural accumulation of rain or snow? Sometimes. Sometimes? They have to do it every time they walk outside when it rains or snows. Not necessarily at Farrell Hospital if they would have used a different entrance other than this one, Your Honor. She used the entrance she chose, not the entrance they chose for her. Correct. She could have chosen a number of different exits. The reason she chose this exit, Justice Hoffman, was that there are a number of these clock-out stations around the hospital. That makes sense. This one was closest to this back door. Why did she use this one? Two reasons. She knew that's where the clock-out was, and a lot of the employees liked the clock-out there because there was a lot just across the street from the back of the hospital. So did she derive a benefit, Justice Hoffman, from going out that door? Absolutely she derived a benefit. But there's also a benefit to the employer. What does this have to do with the neutral risk analysis? She started down the quantitatively increased risk, and then you took a detour. So get back to what you think brought this into the realm of a compensable neutral risk because she was exposed to this from a quantitatively increased way. Simply because if you look at the testimony, thank you, Justice Harris. If you look at the testimony, the testimony is that this back entrance is used by 75% of 100 times. It's not used by visitors to the hospital because they don't even know it's an entrance or an exit. So my argument, Justice Harris, if the court doesn't find there was a hazard, and that's the reason the case is compensable, that my client, as an employee of the hospital, checked out close to these stairs, was encouraged to go this way, encouraged to park there, and she did it many more times than the general public ever thought about. How do we know that? What testimony in the record establishes the quantitative that she perversed this more than the general public? What specifically is in the record? Sure, Your Honor. Other than this was convenient for her, and we understand that. Logically, she would go out the most convenient exit. So how do we get beyond that argument? She testified herself that she had done this for a number of years. Terry DeBose, another witness, testified that she walked and parked there a number of years. In fact, Kaylee Bruce, the HR person, responded, the person they called, said her office was in the front. She didn't really know what went on there. How is this any different than Caterpillar traffic? I mean, you've got the employee going from work out to the employee parking lot, steps off the curb. Same frequency as what you're claiming your client was exposed to here. That's not a quantitatively increased risk, though. Justice Harris, I appreciate your point and the analysis with Caterpillar. I do think it's different from a frequency perspective. Now, do I think that the neutral risk argument is as good an argument as my hazardous argument case? No. I understand the difficulty with the argument, but there is nothing in the record. You can't find anything in the record to suggest that the general public had even close to the traversement or any idea to come in and out of this door. This was really for employees. That's not the obligation of the respondent. It's your obligation to prove that the walking down of these stairs was at a greater frequency than the general public would have in traversing stairs, and not necessarily these stairs. I had three witnesses, Justice Hoffman, my client, Terry DeBose, and Owens, along with my cross-examination of Bruce, that all lead this court to the conclusion that this was predominantly an employee-only mode of ingress and exit. That's a great argument if there's a defect in the entrance that's being used, Bonarito. But that was because there was a defect there that they were required to cross over. You've not made the case, to my mind, that there was any defect. I understand that, Your Honor. I do. I understand. Counsel, time is up. You'll have time to reply. Thank you, Justice Holdren. May it please the Court, Mr. Carraway. I'm Brian Smith, and I represent the respondent, Feral Hospital, in this case. The Dukic case that Mr. Carraway just talked about was decided by this Court in 2017, and, Justice Hoffman, I think you alluded to this. In that case, it was undisputed that there was a slippery condition because of rain. And what the Court said is the risk that the claimant confronted at the time of her accident was the risk of walking on wet pavement in the rain on property owned and controlled by her employer. The question presented in that case, then, is whether the injury caused by an exposure to that risk standing alone was defensible under the Act, and this Court said that it was not. That same analysis should lead to the conclusion that the Commission's decision in this case is not against the manifest weight of the evidence. The Petitioner's attorney pointed to two potential defects, and I'll just say one thing about the lighting situation in addition to what was discussed a moment ago. It was undisputed, and I believe the Petitioner testified that 10 yards away was a streetlight. And it's pretty obvious when you read the record that the Petitioner did not attribute her fault to darkness. So that's a red herring. The light is a red herring, right? Agreed. Darkness is not a hazard in this case. The slippery condition, to the extent it is slippery, and I would say there's a little bit of a dispute whether it was actually slippery. If you look at her recorded statement, she says at one point that the steps weren't slippery, but even assuming that they were, there's no dispute that it was due to rain. And so those are the two alleged defects in this case. The Dukic case has clear application here. The plaintiff had clocked out. She was only carrying her own personal handbag. She wasn't in a hurry. She wasn't completing any tasks for the respondent. The respondent did not require her to exit through the door that she used. There was, I believe, a door closer to where she clocked out, but the testimony that she gave was the door that she used was closer to where she parked. She voluntarily chose that door. She voluntarily chose to use the lot that she parked in. Could have parked anywhere around the hospital. As counsel said, it's a small, rural hospital. She could have used any of the doors. Identified at least nine doors herself that she could have used. And unlike the employer in the Dukic case, the respondent didn't require her to park anywhere. There's no defect in the steps that she took at the street level. What was not discussed a moment ago was there was an immediately adjacent wheelchair ramp, and she could have chosen to use the wheelchair ramp. And her testimony was that she used those same steps going in that morning. And she said, if I knew there was something wrong with those steps, I could have used that wheelchair ramp. So long and short of all of this, as you would agree, this is simply strictly a neutral risk case, is it not? Absolutely, Judge. Absolutely. And to the extent that there's any risk, we cited the Darrow case and the Hatfield case. The petitioner's actions created an increased personal risk for her own benefit. And so the commission's decision is entirely right in this case. There just simply is not evidence to support an injury arising out of this. What do you mean increased personal risk? I haven't been to them. You just said something about increased personal risk. She created an increased personal risk. Sure. And what the case law says is where a claimant voluntarily exposes herself to an unnecessary personal danger, solely for her own convenience, the injury does not arise out of the employment. And the way this came up in the commission's decision was the arbitrator identified, even assuming, and we're going back to the darkness now, even assuming that it was dark, the petitioner voluntarily chose to use those steps despite the fact she may or may not have been able to see it. That's not personal risk, though. We're going down a rabbit hole here. And frankly, I think it's far afield. I think we've already discussed the darkness enough. So that would be the only place that it would go. So unless you all have additional questions, we would just respectfully request that this Court affirm the commission's decision. Thank you. Thank you, Counsel. Counsel, you have five minutes to reply. I want to focus, again, on my client's testimony with the good questions, as always, from the bench today. If you look at the transcript, and I'll read it, but if you look at the transcript starting on page 93, this is the conversation between myself and my client under oath about the lights. How many lights are questioned? How many lights are there on the building? There were two. Two? Answer, yes. There were two out. It was really, really dark. I said, okay. She said, you had to watch where you went or you would fall. Was the electricity out? No. You don't know whether that street light, again referenced by Counsel on the corner, was on or off. There were no lights when I went out. The question becomes, I guess, with the questions from the bench, which I understand, is that this case is either compensable or not. Because my client said it was dark, she slipped off the top step, but she didn't then say, and I know the reason I slipped was it was dark. Seems to me to be the delineating line from some of the questions between compensability or not. It boils down to the question of whether the reason why she fell was because it was dark and no one asked her the question. She said she didn't know the reason why she fell. If she doesn't know the reason why she fell, the case is in legion. There is no recovery on any theory. If she doesn't know why she fell. Because you can't turn around and say that she was exposed to a hazard in the employment or in the condition of employee's premises if she doesn't know why she fell. All she could do, and I agree, Justice Alito, all she could do, though, was tell the story of what happened to her. And that's what she could tell honestly on the stand. She didn't, she said on the stand it was dark multiple times. She said there was a light out multiple times. It was November 26th in Southern Illinois at 8 o'clock and it had been raining. Again, I don't think there's much of an issue whether or not the steps were slick. When she gave the recorded statement, her testimony at trial was consistent with that. She wasn't trying to do anything other than say what happened to her. And all she could say what happened to her is I missed the top step. Not because of darkness. If she said I missed the top step because it was dark and it wasn't illuminated, that would be different. See, the problem I'm having is you want us to announce a decision quite candidly that fills in the gaps. We presume because it was dark that she fell because of darkness. Is it your burden to prove that or do we make presumptions here on liability? I don't think we can. It's my burden to prove, Justice Alito. Counsel, you've got to be careful about what you say. Because you just said that she said she missed the top step. That's not the case. She said she slipped on the top step. It's very different in terms of the mechanism of injury here. If it's dark, street light's out, and she testified that she couldn't see and she missed the top step, that's one thing. To say that she slipped off of the first step, which is what is in the record here, it's completely different. So you've got to be careful about that. I wasn't trying to misquote the record, Justice Harris. I was just trying to quote her recorded statement. Thank you again. Again, this is a case for a nurse, and that's not the issue before the court today, but as my record states and her testimony states, she never worked again. And this is her only avenue of recovery. She can't see the hospital because of the bargain that we struck in WordCom. So I'd ask you to consider that and consider the record. Again, thank you very much. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement with disposition shall issue.